**GET–N–GO, INC., Appellant,**

v.

**Viola MARKINS, Appellee.**

No. 06S01–8910–CV–00737.

Supreme Court of Indiana.

Feb. 28, 1990.

Michael R. Franceschini, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellant.

James H. Young, Young & Young, Indianapolis, for appellee.

## PETITION FOR REHEARING

DeBRULER, Justice.

Appellee Viola Markins was awarded a judgment in Boone Circuit Court for injuries she sustained in a fall on the premises of appellant Get–N–Go. Get–N–Go appealed the judgment on several grounds and the Court of Appeals reversed the trial court, holding that Markins had incurred the risk of her injuries as a matter of law. Because the Court of Appeals found reversible error on the issue of incurred risk, it did not address the other issues raised by Get–N–Go. Markins filed a petition to transfer in this Court, which was granted. We reversed the decision of the Court of Appeals on the issue of incurred risk; however, in affirming the trial court, we did not address the other issues raised by Get–N–Go in its appeal. Get–N–Go has appropriately filed a petition for rehearing which we now grant so that these issues may be addressed. A complete account of the facts pertinent to this case can be found at 544 N.E.2d 484.

■ Get–N–Go claims that Markins was contributorily negligent as a matter of law in that she failed to appreciate or discover a risk that would be apparent to a reasonable person. In support of this argument, Get–N–Go focuses on the testimony of four witnesses that the steps where Markins fell were obviously slippery. These witnesses include Mounts and Mullins, who were the two who carried Markins into the store after she fell; Mary Jones, who is Markins's daughter; and Beverly Gulley, who

had entered the store shortly before Markins. As was pointed out in our original opinion, an appellate court is not permitted to reweigh the evidence or judge the credibility of the witnesses. *State Farm Life Ins. Co. v. Spidel* (1964), 246 Ind. 458, 202 N.E.2d 886. Such matters are for the jury. Even so, the testimony relied upon by appellant does not support its contentions. Markins's daughter testified that she did not even look at the steps where her mother fell on the day of the injury. Mullins and Mounts both testified that the steps were slippery, but examined the steps only after Markins had fallen. What is obvious to a reasonable person after a mishap is not necessarily obvious before the fact. It is not at all surprising that Mullins and Mounts would testify that the steps where Markins fell were slippery once they were aware that she had fallen on them. Their testimony, however, does not indicate whether they were aware of the condition of the steps before Markins fell. Mullins was across the street before the fall and Mounts had used a different approach than Markins when he entered the store. Gulley, on the other hand, who had used the same steps as Markins, testified that she was not aware of the slippery conditions until she had walked on the parking lot for awhile. Her testimony further indicates that she dealt with the hazard in much the same way as Markins did: by holding on to a telephone pole in the parking lot. The evidence was, at best, in conflict on the question of whether a reasonable person should have discovered the dangerous condition of the parking lot and therefore certainly cannot be said to lead solely to a conclusion contrary to that reached by the jury. *Id.*

Similarly, it was for the jury to determine if the manner in which Markins chose to climb the step was among the methods that a reasonable person might employ under similar circumstances. Get–N–Go asks this Court to reweigh this determination as well. The record indicates that this issue was discussed at length before the jury, and we will not disturb their finding absent unequivocal proof that their determination was in error. Such proof is lacking here.

Markins was not, therefore, contributorily negligent as a matter of law.

■ The next two issues raised by Get–N–Go concern whether the trial court properly instructed the jury as to the law pertinent to this cause of action. It first argues that the trial court's Instruction No. 10 did not correctly state the law since it required the jury to find a mental state of venturousness on the part of Markins before it could conclude that she had incurred the risk of her injuries. A review of the instruction indicates that it essentially tracks the language of this Court's opinion in *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552. It accurately reflects the law on incurred risk as stated in that case:

> [Incurred risk] involves a mental state of venturousness on the part of the actor, and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk.... [T]he very essence of incurred risk is the conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has *actual* knowledge.

*Id.* at 554. The trial court did not err in giving Instruction No. 10.

Get–N–Go next argues that the trial court's Instruction No. 4 was an incomplete statement of the law. That instruction stated that Get–N–Go owed Markins an active duty to maintain its property in a reasonably safe condition by exercising reasonable care to discover possible dangerous conditions and by taking reasonable precautions to protect her. It is argued that the instruction failed to state that a business invitor's duty to maintain its premises in a reasonably safe condition for the benefit of its invitees continues only until or unless the invitee has knowledge of the dangerous conditions existing on the premises. Get–N–Go tendered an instruction to this effect which was given as the

court's Final Instruction No. 13 and thus any omission in Instruction No. 4 was cured by the statements in the latter instruction. However, we take this opportunity to clarify the law as stated by appellant Get–N–Go.

■ The proposition that an invitor's duty to an invitee to maintain his business premises in a reasonably safe condition ceases when the invitee has knowledge that the premises are unsafe is at odds with the oft-stated principle that an invitor has a continuing duty to maintain his premises in a reasonably safe condition. The confusion stems from this Court's adoption in *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484, of language used in the dissenting opinion to *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677. In *Law*, Judge Staton noted in his dissent:

> As a business invitor, Yukon owed a duty to Law, an invitee, to exercise reasonable care to maintain the plant in a reasonably safe condition unless and until Law had reasonable notice that the premises were not safe.

*Id.* at 681. An examination of the line of authority leading to this proposition, *Letson v. Lowmaster* (1976), 168 Ind.App. 159, 341 N.E.2d 785; *Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821; *Robertson Bros. Dep't Store v. Stanley* (1950), 228 Ind. 372, 90 N.E.2d 809, suggests that the correct rule of law is somewhat different. These cases make clear that what ceases once the invitee has knowledge that the premises are unsafe is not the duty of the invitor, but the invitee's right to assume that the invitor has carried out his duty to use due care. *Hammond,* 262 Ind. at 86–87, 311 N.E.2d at 824–25; *Robertson Bros.,* 228 Ind. at 378, 90 N.E.2d at 811. The distinction is a crucial one, particularly with the advent of comparative fault in our state. The knowledge of a plaintiff in a negligence action will have a bearing on some affirmative defenses relied upon by a defendant, most prominently incurred risk, and often contributory negligence. However, affirmative defenses have never excused a defendant's duty to exercise rea-sonable care. Instead, what is excused is the liability for failing to exercise the duty of reasonable care. The duty of an invitor to exercise reasonable care for the safety of his invitees is an active and continuing one. *Id.* It does not cease simply because the invitee learns of unsafe conditions on the premises, but the invitee's knowledge may, of course, be considered in determining his fault.

■ The remaining issues concern two instructions tendered by Get–N–Go which the trial court refused to give. The law governing the failure to give instructions is well established. It is not error to refuse to give an instruction when the subject matter is substantially covered by other instructions given by the court. *Thornton v. Pender* (1978) 268 Ind. 540, 377 N.E.2d 613. The instructions state that it is contributorily negligent for a plaintiff to fail to discover or appreciate a risk that would be apparent to a reasonable person and that an inadvertent mistake in dealing with a risk is also contributory negligence. We find the instructions given by the court adequately covered the subject matter of Get–N–Go's proposed instructions. The court's instructions stated that contributory negligence included the failure of the plaintiff to use reasonable care to avoid injury to herself and the failure to do what a reasonably careful and prudent person would do under the same or similar circumstances. This is a correct statement of the law of contributory negligence and addresses the concerns expressed by Get–N–Go in its tendered instruction. It was therefore not error for the court to refuse to give the requested instructions.

The decision of the Court of Appeals remains vacated and the judgment of the trial court is affirmed.

GIVAN and DICKSON, JJ., concur.

SHEPARD, C.J., dissents without opinion.

PIVARNIK, J., not participating.